**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEVIN M. SHELDRICK and THERESA M. SHELDRICK,<br><br>       Plaintiffs,<br><br>  v.<br><br>WELLS FARGO BANK, N.A. a/k/a AMERICA'S SERVICING COMPANY, WELLS FARGO HOME MORTAGE, et al.,<br><br>       Defendants. | Civil Action No. 16-2797 (FLW)<br><br>**OPINION** |

**Hon. Freda L. Wolfson, U.S.D.J.:**

  Before the Court is the motion of Wells Fargo Bank, N.A., a/k/a America's Servicing Company, and Wells Fargo Home Mortgage ("Defendants") to dismiss the *pro se* complaint of Kevin M. Sheldrick and Theresa M. Sheldrick ("Plaintiffs") for lack of federal subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants contend that, (i) pursuant to the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over Plaintiffs' claims for equitable and monetary relief against Defendants in their capacity as Plaintiffs' mortgage loan servicer as a result of the New Jersey State court judgment entered in a foreclosure action concerning Plaintiffs' property; (ii) that Plaintiffs' claims are barred by *res judicata*, New Jersey's entire controversy doctrine, and collateral estoppel; and (iii) that Plaintiffs have otherwise failed to state a claim. Because Plaintiffs' claims were either actually litigated in or were inextricably intertwined with the New Jersey foreclosure action, Plaintiffs' claims are

1

subject to the *Rooker-Feldman* doctrine, or are precluded by the New Jersey entire controversy doctrine. Defendants' motion is therefore granted, and the Complaint is dismissed with prejudice.

This Court's dismissal of Plaintiffs' Complaint on jurisdictional and procedural grounds, however, is not an endorsement of Defendants' policies and practices which are alleged to have obstructed Plaintiffs' good faith attempts to secure mortgage relief. Cases such as Plaintiffs' continue to proliferate in our federal courts, as plaintiffs in difficult financial circumstances consistently complain of mortgage lenders' and servicers' allegedly deceptive and unfair mortgage loan servicing practices, and these mortgage industry entities, including Wells Fargo, respond with the same jurisdictional and procedural barriers to plaintiffs' claims. Nevertheless, in this case, given the procedural posture and underlying facts of Plaintiffs' claims, such unfortunate circumstances cannot be remedied by this Court. *See, e.g. Davis v. Wells Fargo*, 824 F.3d 333, 345 n. 15 (3d Cir. 2016).

FACTUAL BACKGROUND & PROCEDURAL HISTORY

In accordance with the standard applicable in evaluating a motion to dismiss, the following facts are taken from the Complaint unless otherwise noted.[1] Plaintiffs obtained a

---

[1] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. . . . However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted) (emphasis and alteration in original). *See also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). Here, Plaintiffs' Complaint alleges misconduct by Defendants in the servicing of Plaintiffs' mortgage up to and including the bringing of a foreclosure action in New Jersey state court. Defendants have attached to their motion to dismiss, the underlying mortgage and note, as well as the docket

mortgage from Superior Mortgage Corp. on October 21, 2009, in order to refinance an existing mortgage on a property located at 100 Dutch Lane road, Marlboro Township, New Jersey 07746 (the "Property"). June 1, 2016 Certification of Siobhan A. Nolan, Esq., Ex. A (Mortgage Note dated October 21, 2009). Sometime before September 2011, one of the Plaintiffs was diagnosed with Multiple Sclerosis ("MS") and stopped working as a result of the illness.[2] Compl. ¶ 1. Plaintiffs contacted one of the Wells Fargo Defendants in September 2011 for mortgage assistance.[3] Compl. ¶ 2. During this initial contact a Wells Fargo representative stated that Plaintiffs qualified for a modification of their home loan due to the change in their financial circumstances. *Id.* From September 2011 to March 2012, Plaintiffs made at least two phone calls to one of the Wells Fargo entities to check on the status of their modification. *Id.* On March 15, 2012, a Wells Fargo representative informed Plaintiffs that they did not make enough money to qualify for a loan modification. *Id.*

On July 23, 2012, one of the Plaintiffs wrote a letter to President Obama and then Congressman Rush Holt explaining the problem they had encountered in their attempt to obtain a mortgage modification from Wells Fargo. Compl. ¶ 4. On August 8, 2012, Plaintiffs received a letter from the Department of the Treasury providing telephone numbers for government

---

and court documents of the state court foreclosure action involving the parties. The Court considers these documents on Defendants' motion as undisputedly authentic documents integral to the allegations in the Complaint.

[2] The Complaint shifts between the first person singular and the first person plural, without specifying which of the Plaintiffs is making the individual statements.

[3] The Complaint refers to "Wells Fargo," without specifying which of the defendant Wells Fargo entities is intended. Further, neither the Complaint nor Defendants' opposition explains why Plaintiffs reached out to "Wells Fargo" in September 2011, when Wells Fargo, N.A., did not become the holder of Plaintiffs' mortgage by assignment until May 2013. From context, however, it appears likely that Wells Fargo was the servicer of Plaintiffs' loan in September 2011, but did not acquire a beneficial ownership interest in the loan until the May 2013 assignment. It is common practice for a third party to service a mortgage held by another.

3

agencies from which Plaintiffs might receive more information. *Id.* One of the Plaintiffs called one of the numbers provided and was redirected to another number for the Department of Housing and Urban Development ("HUD"), which administers Federal Housing Assistance ("FHA") loans. *Id.* The HUD representative, reached by phone, suggested to Plaintiffs that they should meet with a mortgage loan counselor. *Id.*

On September 4, 2012, one of the Plaintiffs met with a loan counselor at Novadebt[4], who called Wells Fargo on Plaintiffs' behalf with at least one of the Plaintiffs on the line. Compl. ¶ 5. The Wells Fargo representative refused to speak with the Novadebt representative. *Id.* In November 2012, Congressman Holt's office contacted Plaintiffs and indicated that the Congressman had asked Wells Fargo to reevaluate Plaintiffs request for mortgage assistance. *Id.* at ¶ 6. Plaintiffs provided additional documents to Wells Fargo as part of this reevaluation. *Id.*

On January 17, 2013, Wells Fargo sent a letter to Congressman Holt's office stating that because Plaintiffs had "engaged legal counsel through bankruptcy or other litigation, going forward [Wells Fargo] w[ould] communicate in compliance with appropriate State and Federal guidelines." *Id.* at ¶ 7. Plaintiffs contend that this statement was a misrepresentation, because Plaintiffs had not yet retained legal counsel and were only dealing with Wells Fargo through Congressman Holt's office. *Id.*

Plaintiffs called Wells Fargo again to directly request loan assistance in February 2013. *Id.* at ¶ 8. The Wells Fargo representative again informed Plaintiffs that they did not qualify for loan assistance, this time stating that Plaintiffs were "just squeaking by" or "right on the cusp."

---

[4] The Novadebt entity is not otherwise described in the Complaint.

*Id.* The representative advised Plaintiffs that Wells Fargo might be able to provide assistance if Plaintiffs were unable to make their mortgage payments. *Id.*

In May 2013, Plaintiffs became unable to make their mortgage payments. *Id.* at ¶ 10. On May 24, 2013, Wells Fargo, N.A. was assigned Plaintiffs' mortgage. *Id.* at ¶ 14. Plaintiffs defaulted on their mortgage at some point in May or thereafter in 2013.[5] *Id. See also* Nolan Cert., Ex. D (May 29, 2014 Superior Court of New Jersey Foreclosure Complaint, Dkt. No. F-021550-14) and Ex. G (Docket for Foreclosure Action F-021550-14).

During the summer of 2013, Plaintiffs applied for assistance at the website helpwithmybank.gov. *Id.* at ¶ 11. Potentially as a result of the application, a representative of Wells Fargo contacted Plaintiffs in August 2013, to offer a trial modification. *Id.* Plaintiffs and Wells Fargo agreed to a trial modification payment program. One of the Plaintiffs called Wells Fargo in February 2014 to make the agreed upon trial payment. *Id.* at ¶ 12. The Wells Fargo representative told Plaintiff to delay in making the payment because the proposed modification package had been sent in the mail or would shortly be sent. *Id.*

At some point later, Plaintiffs received the proposed modification package in the mail. *Id.* at ¶ 13. Plaintiffs read the trial modification package, which called for Plaintiffs to take out a second mortgage. *Id.* Plaintiffs called Wells Fargo after reviewing the package and declined the modification. *Id.*

On May 29, 2014, Defendant Wells Fargo, N.A., filed a foreclosure lawsuit in the Superior Court of New Jersey, Chancery Division, Monmouth County. Nolan Cert., Exs. D, G.

---

[5] Defendant contends that the default occurred on August 1, 2013, while the Complaint suggests that default could have occurred as early as May 2013. For the purposes of this motion, however, it is sufficient that Plaintiff has alleged that the default occurred.

5

On August 7, 2014, Plaintiffs filed an Answer and Counterclaims in response to Wells Fargo N.A.'s foreclosure complaint. In addition to summary denials of the allegations of the complaint, Plaintiffs raised affirmative defenses, including, *inter alia*, that Wells Fargo, N.A., had "no standing to bring this foreclosure action," that Wells Fargo, N.A., was "not in possession of the original note and mortgage," and that the mortgage and note referenced by Wells Fargo, N.A., were "the result of Predatory lending, fraud, and violations of federal and state law." *Id.* at Ex. E.

On December 1, 2014, Plaintiffs and Defendant Wells Fargo, N.A., submitted, and the New Jersey Superior Court entered, a consent order withdrawing Plaintiffs' answers and defense and referring the matter to the Office of Foreclosure. *Id.* at Ex. F.

On April 27, 2015, while the foreclosure action was still pending, Plaintiffs filed a complaint against Defendants in the New Jersey Superior Court. That complaint is identical to the Complaint filed in this action. Defendant Wells Fargo, N.A., then moved for final judgment and a writ of execution in the foreclosure action on May 19, 2015. On July 8, 2015 Defendants removed Plaintiffs' April 27 action to the District of New Jersey. Defendants moved to dismiss, and on August 31, 2015, the District Court, the Hon. Anne Thompson, U.S.D.J., presiding, abstained from exercising jurisdiction over the complaint during the pendency of the state foreclosure action under the doctrine set forth by the Supreme Court in *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976), and dismissed the complaint. *Sheldrick v. Wells Fargo Bank, N.A.*, No. CIV. 15-5332, 2015 WL 5098180 (D.N.J. Aug. 31, 2015).

The New Jersey Superior Court entered final judgment in the foreclosure action on July 31, 2015. Nolan Cert., Ex. G. On March 16, 2016, Plaintiffs filed the Complaint in this action — the same complaint that they had filed on April 27, 2015. The Complaint contains four counts. In Count I, Plaintiffs bring a New Jersey State common law claim for unfair or deceptive acts or

6

practices, alleging that Defendants falsely represented themselves as the holder of Plaintiffs' mortgage and deceived Plaintiffs about Defendants' loan modification program. In Count II, Plaintiffs bring a New Jersey state common law claim for unfair or deceptive acts or practices, alleging that Defendants assigned mortgages without registering their assignments as required by New Jersey law. In Count III, Plaintiffs bring a New Jersey common law claim for fraud, incorporating all of the factual allegations in the Complaint. In Count IV, Plaintiffs bring a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, again relying upon the general allegations in the Complaint.

Defendants moved to dismiss the Complaint on June 1, 2016. Defendants contend that Plaintiffs' Complaint is barred by the final judgment in the New Jersey state foreclosure action, pursuant to the *Rooker-Feldman* doctrine, the entire controversy doctrine, collateral estoppel, and *res judicata*, and that, in the alternative, Plaintiffs have failed to state a claim under Fed. R. Civ. P. 12(b)(6). The motion was fully briefed on June 28, 2016. Plaintiffs, without leave of Court as required by L. Civ. R. 7.1(d)(6), filed a sur-reply on June 30, 2016. In their sur-reply, Plaintiffs clarified that they are not seeking to overturn the final judgment of foreclosure, but rather seek damages due to the allegedly unfair and deceptive acts and practices of Defendants. Defendants objected to Plaintiffs' sur-reply brief by letter on June 30, 2016. Given Plaintiffs' status as *pro se* litigants, the Court will consider the untimely sur-reply. Plaintiffs arguments therein, however, do not alter the Court's conclusion that Defendants are entitled to dismissal of the Complaint with prejudice.

STANDARD OF REVIEW

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and

7

determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief ... must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). A plaintiff must show that there is "more than a sheer possibility that the defendant has act unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citing *Phillips,* 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants," rather, "they merely require that plaintiff raise a 'plausible claim for relief.' " *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir.

2013) (quoting *Iqbal,* 556 U.S. at 679). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.' " *Id.* (quoting *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 556).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, *pro se* litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 Fed. Appx. 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.' " *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

ANALYSIS

A. *Rooker-Feldman* Doctrine

Defendants' first contention is that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims under the *Rooker-Feldman* doctrine. "The *Rooker–Feldman* doctrine strips federal courts of jurisdiction over controversies 'that are essentially appeals from state-court

judgments.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 165 (3d Cir. 2010)). Stated differently, "*Rooker–Feldman* ... is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Lance v. Dennis,* 546 U.S. 459, 464 (2006)).

As applied in this Circuit, a "claim is barred by *Rooker–Feldman* under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker–Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims." *Walker v. Horn,* 385 F.3d 321, 329 (3d Cir. 2004) (internal citations, quotations, and brackets omitted).

In the second application of the doctrine, a "federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment.... In other words, *Rooker–Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." *Id.* at 330.

In *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009), a case decided in the foreclosure context most relevant to the case at bar, the Third Circuit considered a post-foreclosure federal claim for rescission of a mortgage. The Court held that any finding by the federal court that no valid mortgage existed would eliminate the basis for the prior state foreclosure judgment and

10

thus was barred by application of the *Rooker-Feldman* doctrine. *See also In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005) (a federal claim for absence of personal jurisdiction in the underlying state court action is barred by *Rooker-Feldman* because plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained."); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 Fed.Appx. 149, 153 (3d Cir. 2008) (barring a claim for "redress" of state court judgment in a foreclosure action); *Ayres-Fountain v. E. Sav. Bank*, 153 Fed. Appx. 91, 92 (3d Cir. 2005) (barring post-foreclosure federal claim for rescission of mortgage and damages). Here, while the Complaint does not explicitly seek rescission of Plaintiffs' mortgage or reversal of the state court's foreclosure judgment, it does seek to have this Court enter findings that would have rendered the state court foreclosure judgment erroneous. The Court therefore finds that it lacks subject matter jurisdiction over all Counts of Plaintiffs' Complaint to the extent they challenge the validity of Plaintiffs' default or Defendants' authority to bring the state foreclosure action.

Beginning the step-by-step analysis of the doctrine, this case involves a "state-court judgment[ ] rendered before the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284. A final judgment of foreclosure was entered in New Jersey Superior Court on July 31, 2015, and this action was not filed until March 16, 2016. The question before the Court on Defendants' motion then is whether the claims in this federal court action were previously adjudicated in, or are inextricably intertwined with, those in the state foreclosure proceeding.

Turning first to the claims that were actually raised in the foreclosure action, several of the Counts of Plaintiffs' current Complaint were potentially raised as affirmative defenses and counterclaims in Plaintiffs' August 7, 2014 Answer, and then withdrawn as part of Plaintiffs' and Defendants' December 1, 2014 Consent Order. Count I, Plaintiffs' New Jersey common law

11

claim for unfair or deceptive acts or practices, alleging that Defendants falsely represented themselves as the holder of Plaintiffs' mortgage and deceived Plaintiffs about Defendants' loan modification program, and Count II, Plaintiffs' New Jersey common law claim for unfair or deceptive acts or practices, alleging that Defendants assigned mortgages without registering their assignments as required by New Jersey law, were litigated in the New Jersey state foreclosure action to the extent that they challenge Defendants' standing to bring a foreclosure action as the legitimate holder of Plaintiffs' mortgage. *See* Nolan Cert., Ex. E (Plaintiffs' Fourth Separate Defense that Defendants had "no standing to bring this foreclosure action," and Plaintiffs' Sixth Separate Defense that Defendants were "not in possession of the original note and mortgage"). Count III, Plaintiffs' New Jersey common law claim for fraud was raised and withdrawn in the foreclosure action as Plaintiffs' Seventh Separate Defense, asserting that the mortgage and note referenced by Wells Fargo were "the result of Predatory lending, fraud, and violations of federal and state law." [6] *Id.* Although Plaintiffs' Seventh Separate Defense also generally incorporates concepts of federal law, the Court does not read it to clearly set forth Plaintiffs' Count IV RICO claim. Accordingly, at least Counts I, II, and III were raised and voluntarily withdrawn by

---

[6] "New Jersey courts bar the relitigation of finally determined issues through the doctrine of collateral estoppel. Collateral estoppel 'bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.' A party asserting collateral estoppel must show that (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (quoting *Tarus v. Borough of Pine Hill,* 189 N.J. 497, 916 A.2d 1036, 1050 (2007)). Although Defendants have moved to bar Plaintiffs' claims on the grounds of collateral estoppel, and it appears likely that at least in the case of Count III, dismissal on that basis would be granted, because the Court finds that dismissal is appropriate due to the absence of subject matter jurisdiction, and in the alternative by application of the entire controversy doctrine, the Court need not reach Defendants' collateral estoppel arguments.

Plaintiffs in the state foreclosure action. Nevertheless, because Plaintiffs' Count IV federal RICO claim was not previously litigated, and because this Court finds application of the *Rooker-Feldman* doctrine even more appropriate under its second prong, this Court does not rest its decision on the claims actually raised by Plaintiffs below alone.

Turning then to whether Counts I-III, even if not already litigated, and Count IV are nevertheless "inextricably intertwined" with the state adjudication, the Court finds that they are. Under New Jersey law, the state foreclosure judgment necessarily decided in Defendants' favor the following essential elements: the validity of the note and mortgage; the alleged default; and Defendants' right to foreclose (which would include its standing by assignment or otherwise). *Siljee v. Atl. Stewardship Bank*, No. 15-CV-1762, 2016 WL 2770806, at *6 (D.N.J. May 12, 2016) (citing *Great Falls Bank v. Pardo*, 622 A.2d 1353, 1356 (N.J. Super. Ct. Ch. Div. 1993)). Unlike many of the cases that have been decided under the doctrine, Plaintiffs' Complaint does not appear to challenge the validity of the underlying note and mortgage. Plaintiffs' claims do however, call into question the causation of Plaintiffs' default and the legitimacy of Defendants' right to foreclose.

For example, it is well-established law in New Jersey that fraud is a defense to foreclosure. *Leisure Tech.-Ne., Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 356, 349 A.2d 96, 98 (App. Div. 1975) (fraud is a cognizable defense to foreclosure under New Jersey law). For this Court to find under Count I that Defendants misrepresented themselves as the holder of Plaintiffs' mortgage and deceived Plaintiffs about Defendants' ability to offer a modification thereof, this Court would necessarily have to find that Defendants were not the legitimate holders of Plaintiffs' mortgage and that Defendants made misrepresentations to Plaintiffs about the modification of Plaintiffs' mortgage. The former finding would undermine Defendants' standing

to bring the foreclosure action, while the latter finding would undermine the legitimacy of Plaintiffs' default. Similarly, a finding under Count II that the assignment of Plaintiffs' mortgage was legally defective would undercut the basis of the state court's judgment that the foreclosure of Plaintiffs' property was valid. If the assignment of Plaintiffs' mortgage to Defendants were not valid, then Defendants would have lacked standing to bring the foreclosure action. The findings necessary to support Counts III and IV would similarly negate Defendants' right to foreclose in the state court action. If Defendants' pre-foreclosure conduct was characterized by a pattern of fraud or a RICO conspiracy, Defendants' right to foreclose upon Plaintiffs' property would be called into question under the New Jersey law of "unclean hands." *Id.* The *Rooker-Feldman* doctrine prohibits this Court from making precisely the kind of findings called for by Plaintiffs' Complaint that would invalidate the bases of the state court judgment. In short, to the extent that Plaintiffs' claims seek to undermine the legitimacy of Plaintiffs' default or Defendants' right to foreclose upon Plaintiffs' property, Plaintiffs' claims are inextricably intertwined with the state court proceeding, because a finding by this Court in Plaintiffs' favor on any one of them would imply that the state court was wrong in entering final judgment for Defendants.

B. *Res Judicata* and Entire Controversy

    Although the absence of subject-matter jurisdiction is sufficient to end the Court's inquiry as to claims challenging Plaintiffs' default or Defendants' foreclosure authority, the Court also finds that the application of the New Jersey entire controversy doctrine, New Jersey's claim preclusion device that expands even beyond the bounds of *res judicata*, is an alternative and sufficient ground for the dismissal of Plaintiffs' Complaint on all bases. Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata*. *See*

*Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 93 (3d Cir. 2005) ("[E]ven if review of the complaint were not barred by *Rooker-Feldman*, we agree with the District Court that Ayres-Fountain's claims were barred by res judicata.").

Whether *res judicata* applies, namely whether a state court judgment should have a preclusive effect in a subsequent federal action, depends on the law of the state that adjudicated the original action.[7] *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). "Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Id.* (quoting *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir. 1991)). The doctrine "bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citing *Post v. Hartford Ins. Co.,* 501 F.3d 154, 169 (3d Cir. 2007)). It "protect[s] litigants from the burden of relitigating an

---

[7] *Res judicata* is properly pleaded as an affirmative defense to liability. "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer," not raised in a motion to dismiss. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). The Third Circuit, however, has long recognized a rule permitting *res judicata* to be raised at the stage of a motion to dismiss. *Williams v. Murdoch*, 330 F.2d 745, 749 (3d Cir. 1964) ("It is a fact that Rule 8(c) speaks of *res judicata* as an affirmative defense which must be asserted under Rule 8(c). But [the] court in *Hartmann v. Time, Inc.*, 166 F.2d 127, 131 (1948), held that the defense of *res judicata* might be raised by a motion to dismiss or by an answer. . . . The defense of *res judicata*, therefore, could be asserted successfully at the early stage of this proceeding if it were valid.").

identical issue with the same party or his privy and ... promot[es] judicial economy by preventing needless litigation." *Id.* (citations omitted).

New Jersey, however, has its own claim preclusion device, separate and apart from but closely related to *res judicata*, that imposes even stricter requirements upon plaintiffs. The Third Circuit has described New Jersey's entire controversy doctrine as ""an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 229 n. 130 (3d Cir. 2016) (quoting *Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999)). New Jersey's entire controversy doctrine "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513 (N.J. 1995)). In a recent decision, the Third Circuit summarized its holdings on the doctrine:

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court [.]" *Cogdell v. Hosp. Ctr. at Orange,* 116 N.J. 7, 560 A.2d 1169, 1172 (1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.,* 111 N.J.L. 439, 168 A. 796, 797 (1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon."). Like its "blood relative[ ]" res judicata, the entire controversy doctrine is an affirmative defense, *Rycoline Prods.,* 109 F.3d at 886, and it applies in federal courts "when there was a previous state-court action involving the same transaction," *Bennun v. Rutgers State Univ.,* 941 F.2d 154, 163 (3d Cir. 1991).

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015).

Where the rule is found to apply, its preclusive effect is clear: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A. But the rule applies only to claims that could have been permissibly joined in the prior proceeding. N.J. Ct. R. 4:64-5 limits permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure. "Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action." *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011) (citing *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.,* 137 N.J. Super. 353, 349 A.2d 96, 98-99 (1975) ("The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action."). *See also In re Mullarkey*, 536 F.3d 215, 229–30 (3d Cir. 2008) ("germane claims are those arising out of the mortgage transaction which is the subject matter of the foreclosure action") (citations omitted).

Courts in this district have held that "[p]ost-*Leisure Technology*, the germaneness rule has solidified" as setting forth "'that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure.'" *Zebrowski v. Wells Fargo Bank, N.A.*, No. CIV. 1:07CV05236, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (quoting *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div.1998). *See also Fraize v. Gov't Nat'l Mortg. Ass'n*, No. 14-CV-7152, 2016 WL 958392, at *8 (D.N.J. Mar. 14, 2016) (same).

17

Here, all four Counts of Plaintiffs' Complaint arise out of the mortgage that was the basis of the New Jersey Superior Court foreclosure action. As an initial matter, all of Defendants' underlying conduct alleged in the Complaint involved the servicing of Plaintiffs' mortgage and took place before the filing of the foreclosure action in May 2014. The Counts based upon that conduct thus could have, and should have been raised as equitable defenses in the state court foreclosure action. Count I alleges unfair and deceptive practices in Defendant Wells Fargo, N.A.'s conduct as the servicer of Plaintiffs' mortgage that allegedly contributed to Plaintiffs' default and failure to obtain a modification. Count II challenges the validity of the assignment of Plaintiffs' mortgage to Defendants, thereby attacking Defendants' standing to bring the foreclosure action. Counts III and IV allege fraud in Defendants' mortgage servicing practices, which again challenge Defendants' right to bring a foreclosure action against Plaintiffs. Plaintiffs' claims challenging servicing practices and Defendants' status as the holders of Plaintiffs' mortgage are thus clearly germane to the underlying state foreclosure action. Indeed, as the Court observed above, variants of Counts I, II, and III, even appeared as separate defenses in Plaintiffs' state court Answer and Counterclaims, evidencing Plaintiffs' tacit acknowledgment that their challenges to Defendants' past conduct were germane to the foreclosure action. Nolan Cert., Ex. E. *See, e.g.*, *Delacruz v. Alfieri*, 447 N.J. Super. 1, 21, 145 A.3d 695, 706–07 (App. Div. 2015) ("Plaintiffs argue they are not challenging the foreclosure judgment, but are seeking damages against [Defendant] for conduct in the mortgage loan transaction that was the subject of the foreclosure action and judgment. As to [Defendant], plaintiffs asserted affirmative defenses that raised many of the claims they now assert, and there are no claims raised that could not have been raised in the foreclosure proceeding. For these reasons, [Defendant's] motion for summary

judgment is granted on the grounds that plaintiffs' claims are barred by the entire controversy doctrine.").

Finally, although Defendant Wells Fargo Home Mortgage was not a named party in the New Jersey Superior Court foreclosure action, the entire controversy doctrine required Plaintiffs to name "all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline*, 109 F.3d at 885 (quotation omitted). As Plaintiffs appear to raise all claims in the Complaint against both Defendants, and this Court has found that such claims were properly raised in the foreclosure action, Defendant Wells Fargo Home Mortgage should have been joined to the foreclosure action as a counterclaim defendant.

The Court appreciates *pro se* Plaintiffs' misunderstanding of the legal doctrines at issue in this case as evidenced in Plaintiffs' sur-reply. Plaintiffs clearly believe that because they are not seeking to have the Court explicitly overturn the state foreclosure judgment and return their former home to them, *Rooker-Feldman* and the entire controversy doctrine should not apply. Plaintiffs appear to believe that they should be able to maintain a separate action for damages on the basis of their allegations of Defendants' well-documented pattern of abuses in the mortgage foreclosure industry alone. In reply, for example, Plaintiffs cite to *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013), in which the Ninth Circuit reversed the dismissal of the plaintiff's claims of misconduct by Wells Fargo in the handling of a mortgage trial modification. The problem for Plaintiffs' argument, however, is that, unlike for the claims in *Corvello*, the individual findings necessary for the Court to proceed on Plaintiff's fraud, unfair practices, and RICO claims would, in the case of *Rooker-Feldman*, directly contradict and invalidate those underlying the state court foreclosure action, and, in the case of the entire controversy doctrine,

directly implicate issues that Plaintiff was required by New Jersey law to raise as affirmative defenses or counterclaims in the foreclosure action. In short, the time and the place for Plaintiffs to bring their claims challenging the mortgage servicing practices of Defendants in the run up to Plaintiffs' foreclosure was Plaintiffs' state court foreclosure action. The law is well settled that this federal court may not revive such claims after a final judgment has already been entered by the state court.

CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction over Plaintiffs' Complaint, and, in the alternative, finds Plaintiffs' Complaint barred by the application of New Jersey's entire controversy doctrine. Defendants' motion is therefore granted and Plaintiffs' Complaint is dismissed with prejudice.

Dated:      12/16/2016            /s/ Freda L. Wolfson
                                  The Honorable Freda L. Wolfson
                                  United States District Judge